Summers, J.
Municipal corporations are agencies of (¿he state. Section 6, article 13 of the constitution, provides: “The general assembly shall provide for the organization of cities, and incorporated villages, by general laws, and restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent the abuse of such power. ’ ’
In obedience to this mandate laws have been enacted under which our municipalities play their very important parts in carrying on the government of the state. The first general act was passed in May, 1852 (50 O. L., 223). The matter then was. comparatively insignificant. This act authorized them to contract and, in addition to certain enumerated powers, to exercise such other powers as are incident to municipal corporations of like character. A limited power of taxation was conferred and power to borrow a limited amount of money in anticipation of the revenues of the current fiscal year, and the council was explicitly enjoined not to “authorize any order or appropriation of money, when there is not in the city treasury money unappropriated sufficient to pay such appropriation,” and it was provided that “any appropriation otherwise made or authorized, shall be held and deemed utterly void, and of no effect against said corporation,” and that “no *192 money shall be appropriated by the council except by ordinance.” The next general act of importance is the municipal code of 1869 (66 O. L., 145). This act specifies various purposes for which taxes might be levied and the rate for each, and provided that “the council shall not make appropriations nor contract debts for the ordinary purposes of the corporation, exceeding the amount of taxes and revenue from other sources for the current year,” and that “all services rendered and performed, and all supplies furnished for the corporation, shall, as far as practicable, be rendered, performed and supplied in pursuance of contracts to be authorized by the council, through some appropriate officer or department of the corporation.” It is patent from these provisions that the legislative policy respecting its municipal agencies in the matter of their ordinary living expense was pay as you go. That these provisions were not sufficient to effect that policy is apparent from the law passed in 1874 (71 O. L., 80) to authorize the City of Cincinnati to borrow one million dollars to pay its floating debt. Construing this act in the State ex rel. v. Hoffman, Auditor, 25 Ohio St., 328, 333, Gilmore, J., says: “Notwithstanding the provisions of the code against going in debt for ordinary purposes, beyond the revenues of the current year, they seem to have been wholly inadequate, and a floating debt of a million dollars had been by some means saddled upon the city. It is plain that such a debt could not have been in existence if the annual expenditures for ordinary purposes had been kept within the revenues of each current year. It may be inferred that this result had probably been brought about partly through the instrumentality of contracts not very definite in their terms respect *193 ing what was to he done, or the price to he paid for it, and partly through contracts entered into and performed, without there being money on hand to pay the expense, and requiring expenditures greater than the current annual revenues would meet. ’ ’
He then points out the remedy provided by the act. “Prom the taking effect of this act, no ordinance or other order for the expenditure of money shall be passed by the city council, or any board, or any officer, or any commissioner having control over the moneys of the city, without stating specifically in such ordinance or order the items of expense to be made under it, and no such ordinance or order shall take effect until the auditor, of said city shall certify to the city council there is money in the treasury especially set apart to meet such expenditure, and that all expenditures greater than the amount specified in such ordinance or order shall be absolutely void, and no party whatever, shall have any claim or demand against said city therefor; nor shall the city council, or any board, or any officer, or any commissioner of said city, have any power to waive or qualify the limits fixed by such ordinance or order, or fasten upon said city any liability whatever for any excess of such limits, or release any party from an exact compliance with his contract under such ordinance or order.” This is the so-called Worthington law and it was carried into the revision of 1880 as section 2699. However, it applied only to Cincinnati and in 1876 its remedial provisions were given general application by the enactment of the so-called Burns law, in part comprised in sections 1693 and 2702, Revised Statutes. These provisions were more than limitations upon the power of the munici *194 palities to contract, they prescribed the mode in which an obligation on the part of the city might be ■created and the mode prescribed was the measure of the power' to contract. Applying these provisions, it has been held that in a suit on a contract against a municipality an averment of an observance of them is essential to the statement of a cause of action, that in the absence of the strict observance of them no liability is incurred by the municipality, that an implied liability on the municipality cannot be created by its receiving.or retaining the benefit of performance of such a contract by the other party and that it is not estopped by the acts of its agents or officers, for the reason that these provisions are intended for the protection of the citizen, and that persons dealing with its officers are presumed to know the extent of their authority. City of Lancaster v. Miller, 58 Ohio St., 558; Buchanan Bridge Co. v. Campbell et al., 60 Ohio St., 406; Comstock v. The Incorporated Village of Nelsonville, 61 Ohio St., 288; City of Wellston v. Morgan, 65 Ohio St., 219.
But, because a municipality is not legally liable to pay for a public improvement, it does not follow that it is not under a moral obligation to do so or that a court because it will not enforce payment will enjoin it. The contract for paving this street is not ultra vires. If invalid it is so merely because the contract was made before the bonds to provide the money to pay for it were sold. Now that the work has been done in accordance with the contract and the bonds have been sold and the money to pay for it is in the treasury, it is right that it should be paid for and a court of equity ought not, unless its failure to do so would defeat the purpose of the law, pre *195 vent the municipality from doing what equity and fair dealing would exact from an individual.
But in the view taken of the statutes a disposition of the case upon these considerations is not necessary. Under the new municipal code (96 O. L., 20) these sections (1693 and 2702) are repealed. The substance of 2702 is comprised in section 45 of the code (1536-205, Revised Statutes, Bates 5th ed.). Section 1693 is not re-enacted because under the code council is relieved of administrative matters and such duties are imposed on a board of public service. Section 55 of the code provides that if council decides to proceed with the improvement an ordinance for the purpose shall be passed and that it shall contain a statement of the general nature of the improvement and the character of the materials thereof. It appears from the finding of facts that council determined that the paving material should be asphalt, brick or other material as might thereafter be determined. This meets the requirements of the statute. Prior to the adoption of the present code it was provided as to some cities that the kind of materials should not be determined until after bids had been received, the reason being that it promoted competition and tended to prevent collusion among bidders.
Section 2702 is comprised in section 45 of the code with some additional restrictions and a number of important exceptions, suggested by experience, among them this “provided, further, that such requirement shall not apply to street improvement contracts extending for one year or more,” and in 1904 (97 O. L., 44) this section was supplemented by section 45a which reads as follows: “money to be derived from lawfully authorized bonds or notes sold and in process of delivery shall for the purpose set *196 forth in section 45 of this act be deemed in the treasury and in the appropriate fund.” What is meant by “street improvement contracts extending for one year or more” does not clearly appear, whethei it has reference to the period in which the work is to be done or to that in which the payments are to be made. Section 2702 contained this exception: “provided, further, that in cities of the second grade of the first class, contracts for street improvements extending for a period of one year .upon which payments are to be made from time to time, as the work progresses, material is furnished, or service performed, such cities are authorized to enter into such contracts if the estimated expenditure thereunder does not exceed the taxes levied for such purposes during the term of the contract, and in such cases the certificate of the auditor as herein provided shall not be required other than to state the amount of the levy. ’ ’
Prior to the adoption of the new code section 2273 provided that all cities, excepting those of the third grade of the first class and those of the first grade of the second class, should pay not less than one-fiftieth of the cost and expense of improvements and that the amount to be paid shall be certified to the county auditor and that when so certified it should be considered as money in the treasury in compliance with section 2702. Section 2274 provided that cities, excepting those of the first grade of the first class and of the second class, should levy a tax in addition to that specified in section 2273 for the estimated cost of so much of the improvement as might be included in street intersections and that the levy might be made after the contract had been let or the improvement had been completed. As to Cincinnati *197 and Toledo it was provided by section 2275 that tbe part to be paid by them might be included in any bonds issued for the improvement and be paid by them in like manner as by other property owners. Other special exceptions were made and the tendency of legislation was to exempt such improvements from the requirement that the money be in the treasury before the contract was entered into.
In Comstock v: The Incorporated Village of Nelsonville, supra, it is held that, in the absence of an exception, section 2702 applied to so much of the cost of the street improvement as was to be paid by the city out of a levy and that it did not apply to so much as was to be paid by special assessment, for the reason that the payment that was to be made by the city was included in the general levy which was subject to limitation. As the general law then was, ,the city was not authorized to provide for its part by a levy extending over a number of years and by bonds issued in anticipation of the collection of the levy. Section 51 of the code provides that bonds may be issued in anticipation of the collection of assessments and that the assessment may be payable in one to ten installments, and section 53 provides that any city or village is authorized to issue and sell its bonds as other bonds are sold to pay the corporation’s part of any improvement and may levy taxes in addition to all other taxes authorized by law to pay such bonds and the interest thereon, and in section 95 it is provided that municipalities shall “have power to issue bonds in anticipation of special assessments, and such bonds may be in sufficient amount to pay the estimated cost and expense of the improvement,” so that it would seem to follow now that a municipality may issue bonds in sufficient *198 amount to pay the estimated cost and expense of an improvement and may levy taxes in addition to all other taxes authorized by law, 'to pay the bonds issued and sold to pay its part of the cost of the improvement, that sections 45 and 45a do not apply to improvements for which the city has authorized bonds to be issued to pay the entire estimated cost and expense.
Having found that these sections are not applicable, their interpretation is not necessary.

Judgment affirmed.

Shauck, C. J., Crew, Spear and Davis, JJ., concur.